UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY A/S/O CORE LEXINGTON 500 UPPER, LLC  )<br>  )<br>  )<br>  )<br>Plaintiff,  )<br>  )<br>V.  )<br>  )<br>ARMR GROUP, et al.  )<br>  )<br>Defendants.  )  | Civil Action No. 5: 21-098-DCR<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is a dispute about insurance coverage. Defendants State National Insurance Company, Inc. and Next Insurance, Inc. contend that the insurance policy they issued to ARMR Group does not provide coverage regarding alleged harm caused by ARMR Group's application of an anti-microbial solution while working as a subcontractor for Wells & Wells Construction Company. Because ARMR's Group's application of the solution does not constitute "painting," the activity does not fall within the business description contained within the policy and any resulting claim is not covered under the policy.

### I. Background

Jamison Deacon ("Deacon") completed an online application on behalf of his company, ARMR Group ("ARMR"), to obtain insurance from State National Insurance Company ("State National"), which was administered by Next Insurance Company ("Next"), on January 26, 2019. [Record Nos. 72-1, 72-2] Deacon indicated that ARMR Group was a general contractor that performed commercial and residential painting. [Record No. 72-2, pp. 2-3] When asked

- 1 -

to select all activities that ARMR performed, Deacon selected "painting." *Id.* at 3. He specified that 11 percent of ARMR's painting was interior work and 89 percent was exterior.

State National issued a commercial general liability policy to Deacon and ARMR Group the same day ("the Policy"). [Record No. 72-3] The Policy provides that it applies to bodily injury and property damage only if such injury or damage is "caused by an 'occurrence' that took place in the 'coverage territory'" and "the 'bodily injury' or 'property damage' occurred during the policy period." [Record No. 72-3, p. 14] The Policy includes an endorsement that limits coverage to the following business description:

Painting Contractor – Exterior Buildings and Structures Less Than 3 Stories in Height
Interior Painting
Contractors – Subcontracted Work – Family Dwellings
Contractors – Subcontracted Work[1]

Wells & Wells Construction Co. ("Wells") is a general contractor that oversaw the construction of a residential apartment development in Lexington, Kentucky in 2019. Wells subcontracted with ARMR to perform work that included "cleaning, disinfecting, sanitizing,

---

[1] The Policy also includes a "Fungi or Bacteria Exclusion," which provides:

This insurance does not apply to: Fungi or Bacteria

a. Bodily injury or property damage which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by another person or entity.

and remediation of water and moisture exposure" following heavy rains that occurred during the construction of the building. [Record No. 1, p. 6]  Beginning on February 9, 2019, and on multiple occasions through March 3, 2019, ARMR applied a "highly versatile disinfectant, sanitizer, and cleaner" known as Shockwave to exposed interior lumber surfaces.  Wells paid ARMR $101,950.00 under the subcontract for the work it performed.

The apartment development was completed in August 2019 and residents moved in shortly thereafter.  Beginning on February 6, 2020, residents began reporting water leaks, which were traced to the CPVC sprinkler pipes and fittings in the building's fire suppression system.  Following several more reported leaks, Wells submitted a failed CPVC sprinkler pipe to Plastic Expert Group ("PEG") for forensic analysis.   PEG issued a report on June 29, 2020, indicating that the CPVC pipe assembly failed due to environmental stress cracking caused by its exposure to Shockwave.

Wells filed this action on April 21, 2021, alleging *inter alia* that Deacon and ARMR knew or should have known that Shockwave was chemically incompatible with the CPVC pipes and fittings that had already been installed in the building.  Wells also included a claim for declaratory judgment against State National and Next, seeking a declaration that it was an insured under the Policy.

Core Lexington 500 Upper, LLC, ("Core Lexington") the owner of the apartment complex, was insured by First Mercury Insurance Company ("First Mercury").  [Record No. 42-1]  On January 14, 2022, First Mercury filed an Intervening Complaint alleging that it had paid $2,068,451.19 to Core Lexington under its policy based on the incident.  [Record No. 42]

Accordingly, First Mercury sought to recover from ARMR, Deacon, State National, and Next.[2] However, First Mercury's claims against State National and Next were dismissed as premature on February 15, 2022. [Record No. 54] First Mercury voluntarily dismissed its claims against Deacon shortly thereafter, on March 15, 2022. Accordingly, First Mercury's only remaining claims are asserted against ARMR.

State National and Next ("the Insurance Defendants") filed a cross-claim against ARMR seeking a declaratory judgment that ARMR's conduct is not covered under the Policy. The Insurance Defendants have now filed a motion for summary judgment regarding their claim. ARMR filed a response (2 days late, without explanation), and the Insurance Defendants have filed a reply.[3] Because there is no genuine question that ARMR's conduct did not fall within the business description stated in the Policy, the Insurance Defendants' motion for summary judgment will be granted.

## II. Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute regarding any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party has satisfied this burden, the burden shifts to the nonmovant. The nonmoving party may not simply rely on its pleadings but must "produce evidence that results

---

[2] Wells acknowledged that First Mercury was "the real party in interest" and voluntary dismissed its claims on March 2, 2022.

[3] Despite the fact that First Mercury's claims against the Insurance Defendants have been dismissed (and therefore it had no standing to do so), it filed a response to the motion for summary judgment against ARMR. [*See* Record No. 74.] ARMR's subsequent attempt to incorporate this void response into its own by reference is rejected.

in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). In other words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2019) (citation and alteration omitted).

The Court affords all reasonable inferences and construes the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. The Court does not weigh the evidence or make credibility determinations but determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52 (1986). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The existence of a scintilla of evidence favoring the nonmovant is not sufficient to avoid summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 252). Finally, the Court notes that the interpretation of contracts is appropriately determined through summary judgment when there are no other factual issues in dispute. *Ky. Ass'n of Cnty. Workers' Comp. Fund v. Cont. Cas. Co.*, 157 F. Supp. 3d 678, 681 (E.D. Ky. 2016).

### III.  Choice of Law

Before addressing the merits of the declaratory judgment claim, the Court addresses what law should apply. Here, the Insurance Defendants contend that Kentucky law should apply while ARMR maintains that the substantive law of Georgia governs the dispute.

The Court only need resolve this question if the relevant laws of Georgia and Kentucky are inconsistent. *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667-68 (E.D. Ky. 2010). Although the parties have not explained how the states' laws differ, the Court identifies at least one distinction. Under Kentucky law, when the facts are undisputed and the only issue is whether the facts meet the policy definition, only a question of law for the Court is presented. *State Auto. Mut. Ins. Co. v. Security Taxicab, Inc.*, 144 F. Appx 513 (6th Cir. 2005). In Georgia, however, courts apply the following three-step test when interpreting an insurance policy: (1) the court must decide whether the contract language is ambiguous; (2) if it is, the court must apply the applicable rules of contract construction; and (3) if the ambiguity remains, the question must be submitted to a jury. *Caraustar Indus., Inc. v. Factory Mut. Ins. Co.*, 2011 WL 13214342, at *3 (N.D. Ga. June 13, 2011) (citing *Travelers Ins. Co. v. Blakey*, 342 S.E.2d 308 (Ga. 1986)).

The Court applies Kentucky conflict of laws principles in determining which state's substantive law to apply. *See Asher*, 737 F. Supp. 2d at 667 (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001)). In Kentucky, there is a strong preference for applying Kentucky law. More specifically, it should be applied unless there is overwhelming interest to the contrary for applying the law of another state. *Id.* at 668 (citing *Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000)).

ARMR argues, without explanation, that because the insurance contract does not include a choice-of-law provision, the parties must have assumed that Georgia law would apply. ARMR apparently contends that the contract was formed in Georgia and, therefore, Georgia law controls. But Kentucky does not follow the *lex loci* approach, which would apply the law of the state in which the contract was formed. *Saleba v. Schrand*, 300 S.W.3d 177

(Ky. 2009). Instead, it applies the "most significant contacts" test. Under this approach, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." *Id.* at 181 (quoting Restatement (Second) of Conflict of Laws (1971) § 188(1)).

These principles include the needs of the interstate system; the relevant policies of the forum; the relevant policies of other interested states; the protection of justified expectations, certainty, predictability, and uniformity of result; and ease in the determination and application of law to be applied. Restatement (Second) of Conflict of Laws (1971) § 6(2)(a)-(g). The Court also considers the factors identified in Section 188(2): the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Asher*, 737 F. Supp. 2d at 669 (citing § 188(2)).

Kentucky has an interest in applying its own law because the events underlying the claim for insurance benefits took place in the Commonwealth. *See Asher*, 737 F. Supp. 2d at 669. ARMR has failed to identify an overwhelming interest in applying Georgia law. And the factors identified in §§ 6 and 188(2) do not support the application of Georgia law. It is true that ARMR is a citizen of Georgia. However, according to Wells' Complaint, State National is a citizen of Texas and Next is a citizen of Delaware and California. Accordingly, the policy interests of Georgia do not outweigh those of other interested states. By ARMR's own admission, it performs work "all across the country," so it is unclear why the parties would have anticipated that Georgia law would apply in case of a dispute. If the parties intended for

the law of Georgia (or any particular forum) to apply, they easily could have included a choice-of-law provision.

Given Kentucky's preference for applying its own law and the lack of an overwhelming interest to the contrary, the Court will apply Kentucky law to this dispute.

### IV.  Discussion

#### A.  Application of Shockwave Did Not Constitute Painting.

The Insurance Defendants maintain that there is no coverage under the Policy because ARMR's work involving the application of Shockwave does not fall within the Policy's business description. But ARMR contends that summary judgment is inappropriate because there are genuine issues of material fact regarding what it means to be a painting contractor. Under Kentucky law, "the rights of the parties to an insurance policy are to be determined exclusively by the terms of the policy, unless contrary to existing law or public policy." *Metro. Prop. & Cas. Ins. Co. v. Bolin*, 2020 WL 4572907, at *3 (E.D. Ky. Aug. 7, 2020) (quoting *Interstate Ins. Grp. v. Musgrove*, 11 F. App'x 426, 427-28 (6th Cir. 2001)). Where the words of a policy are clear and unambiguous, they will be given their "plain and ordinary meaning." *Id.* (quoting *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999)).

ARMR suggests that "painting contractor" is a term of art that includes one who uses painting equipment to perform cleaning services. [Record No. 78, pp. 2-3, 7] However, when terms are not defined within a contract, Kentucky courts typically refer to dictionary definitions "to give the terms their ordinary meanings as persons with the ordinary and usual understanding would construe them." *Wild Eggs Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 560 F. Supp. 3d 1049, 1054 (W.D. Ky. 2021) (quoting *Meridian Citizens Mut. Ins. Co. v. Horton*, 2010 WL 1253084, at *5 (E.D. Ky. Mar. 25, 2010)).

"Paint" means:

1. a. (1): to apply color, pigment, or paint to
      (2): to color with a cosmetic
   b. (1): to apply with a movement resembling that used in painting
      (2): to treat with a liquid by brushing or swabbing
         // *paint* the wound with iodine
2. a. (1): to produce in lines and colors on a surface by applying pigments
      (2): to depict by such lines and colors
   b. : to decorate, adorn, or variegate by applying lines and colors
   c. : to produce or evoke as if by painting
      // *paints* glowing pictures of the farm
3. : to touch up or cover over by or as if by painting
4. : to depict as having specified or implied characteristics
   // *paints* them whiter than the evidence justifies[4]

"Painting" is a "product of painting" or "the art or occupation of painting."[5]  Finally, "contractor" is "one that contracts or is party to contract such as one that contracts to perform work or provide supplies or one that contracts to erect buildings."[6]

Multiple definitions of a contested term within a dictionary does not automatically render a contract ambiguous.  *See Henderson Road Rest. Sys., Inc. v. Zurich Am. Ins. Co.*, 2022 WL 2118912, at *4 (6th Cir. 2022).  Instead, a contract is ambiguous if it is "capable of more than one different, *reasonable* interpretation." *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 891 (E.D. Ky. 2014) (emphasis added).  And courts will not "torture words to import ambiguity into a contract" where there is none.  *Wild Eggs Holdings, Inc.*, 560 F.

---

[4]  *Paint*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/paint https://www.merriam-webster.com/dictionary/paint (last accessed July 25, 2022).

[5]  *Painting*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/painting (last accessed July 25, 2022).

[6]  *Contractor*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/contractor  (last accessed July 25, 2022) (cleaned up).

Supp. 3d at 1054 (citing *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). ARMR may argue under the definitions provided in 1.b. *supra* that "paint" should be afforded a broader definition. However, the words in a contract must be read together, in their entirety, and when considered in the context of a "painting contractor," these broad-ranging definitions are nonsensical. *See Nat'l Utility Serv., Inc. v. Tiffany & Co.*, 2009 WL 755292, at *8 (S.D.N.Y. Mar. 20, 2009) (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) ("Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided."). Assigning the term its plain meaning, painting is not cleaning. Accordingly, the work performed when applying Shockwave does not fall within the business description of the Policy.

### B. Subcontracted Work is Limited to Painting.

The business description also makes explicit reference to subcontracted work:

Painting Contractor – Exterior Buildings and Structures Less Than 3 Stories in Height
Interior Painting
Contractors – Subcontracted Work – Family Dwellings
Contractors – Subcontracted Work

While ARMR did not raise the issue of subcontracted work, First Mercury did in its inoperative response. First Mercury argued, essentially, that because "painting" does not immediately precede the phrase "subcontracted work," the Policy covers any type of subcontracted work. The Insurance Defendants maintain that subcontracted work must be painting.

The phrases, "Contractors – Subcontracted Work – Family Dwellings" and "Contractors –Subcontracted Work" do not have a clear meaning on their face. However, the business description begins with "Painting Contractor," so, the provision read in its entirety

suggests that all activities discussed therein relate to painting. To suggest that "subcontracted work" includes *any* type of work activity is simply unreasonable. But assuming the phrase is ambiguous, the Court may look to extrinsic evidence to discern the parties' intent. *See Darwin Nat'l Assurance Co. v. Ky. State Univ.*, --S.W.3d--, 2021 WL 1045716, at *2 (Ky. Ct. App. 2021).

The Court refers to Deacon's application, which was completed the same day the Policy was issued. There, he reported that 100 percent of ARMR's work was painting. [Record No. 72-2] An insured is entitled to all coverage he may *reasonably* expect to be provided under a policy. *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212-13 (Ky. 1986). It is nonsensical that Deacon intended to purchase (incredibly broad) coverage for activities in which his company did not engage. Accordingly, the subcontracting activities are limited to those of a painting contractor.

### C. The Court Need Not Consider Whether the Fungi or Bacteria Exclusion Applies.

The Insurance Defendants also contend that coverage is barred based on the fungi or bacteria exclusion, which provides that the Policy does not apply to any loss sustained due to cleaning or in any way responding to fungi or bacteria. While the parties report that Shockwave is anti-microbial agent, there is no evidence in the record concerning the presence of fungi or bacteria at the subject property. Regardless, the Court need not consider this exclusion since ARMR's application of Shockwave does not fall under the business description contained in the Policy.

### V. Conclusion

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. State National Insurance Company and Next Insurance, Inc.'s motion for summary judgment [Record No. 72] is **GRANTED**.

2. State National Insurance Company and Next Insurance, Inc. do not owe indemnity or a defense to the insured, ARMR Group, for the allegations that were or could have been asserted in this matter.

3. Because the Insurance Defendants have failed to articulate a reasoned argument in favor of entering a partial judgment under Fed. R. Civ. P. 54(b), that request is **DENIED**.

Dated: July 26, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky